IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:22-cr-00679 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| MALIK BROOKS, et al., | |
| Defendants. | MEMORANDUM OPINION & ORDER |

This matter is before the Court upon Defendant Jayon Florence's ("Florence") Motion to Suppress filed on October 5, 2023, which Defendant Malik Brooks ("Brooks") (together, "Defendants") moved to join. (Doc. Nos. 30, 32.)  In the Motion to Suppress, Defendants seek to suppress all evidence seized from a residence on Melbourne Road in East Cleveland, Ohio ("the Melbourne residence"). (Doc. No. 30, PageID# 97.)  Defendants argue that Task Force Officer Matthew Curley's ("Curley") Affidavit for the search warrant failed to establish a nexus between the Melbourne residence and Florence's alleged criminal activity and that the good faith exception does not apply.

On October 13, 2023, the United States of America ("the Government") filed a Response in Opposition to Defendants' Motion to Suppress. (Doc. No. 34.)  Brooks and Florence filed separate Replies on October 19, 2023, and October 23, 2023, respectively. (Doc. Nos. 35, 38.)

I. **Procedural History**

On November 30, 2022, a federal grand jury returned a six-count indictment against Brooks. (Doc. No. 1.)  On April 6, 2023, a federal grand jury returned a superseding indictment, charging Brooks with nine offenses (Counts 1s, 2s, 8s, 9s, 10s, 11s, 12s, 13s, and 15s) and Florence with ten

offenses (Counts 1s, 3s, 4s, 5s, 6s, 7s, 11s, 12s and 14s).  (Doc. No. 10.)  Count 1s charged both Brooks and Florence with Conspiracy to Distribute and Possess with the Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846, and Counts 11s and 12s charged both Brooks and Florence with Illegal Possession of a Machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and Receipt or Possession of Unregistered Firearm, in violation of 26 U.S.C. § 5861(d), respectively.

In Count 2s, Brooks was charged with Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); in Count 8s, Brooks was charged with Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); in Count 9s, Brooks was charged with Illegal Possession of a Machinegun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2); in Count 10s, Brooks was charged with Receipt or Possession of Unregistered Firearm, in violation of 26 U.S.C. § 5861(d); in Count 13s, Brooks was charged with Possession of a Firearm in Furtherance of  Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and in Count 15s, Brooks was charged with Assaulting Certain Officers or Employees, in violation of 18 U.S.C. § 111.

In Counts 3s, 4s, 5s, and 6s, Florence was charged with Distribution of a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); in Count 7s, Florence was charged with Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and in Count 14s, Florence was charged with Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

At their arraignments on April 14, 2023, both Defendants entered not guilty pleas.  (Non-Document Minutes of Proceedings dated April 14, 2023.)  On October 5, 2023, Florence filed the

instant Motion to Suppress asking that all items seized from the Melbourne residence be suppressed.[1] (Doc. No. 30.) That same day, Brooks filed a Motion to Join Florence's Motion to Suppress because the Government used evidence seized from the challenged search in Counts 1s, 11s, and 12s against him—namely narcotics and a Romarm Mini-Draco firearm. (Doc. No. 32.) On October 13, 2023, the Government filed its Opposition. (Doc. No. 34.) Brooks and Florence filed Replies on October 19, 2023, and October 23, 2023, respectively. (Doc. Nos. 35, 38.)

## II. Curley's Affidavit

In his Affidavit, Curley detailed an approximately year-long investigation of Florence for drug trafficking. (Doc. No. 32-1, ¶ 15.) Law enforcement's investigation of Florence began with Brooks's arrest in August 2022. (*Id.* at ¶ 16.) While Brooks was at the Cuyahoga County jail, he made several phone calls to Florence. (*Id.* at ¶ 18.) Based on the content of those calls, Curley believed that Florence had taken over Brooks's drug trafficking business while he was in jail so that Brooks could pay for his lawyer. (*Id.*)

When Brooks was arrested, he had his cell phone with him. (*Id.* at ¶ 17.) Curley obtained a federal search warrant of Brooks's phone. (*Id.* at ¶ 18.) On it were multiple photos of Florence, which matched Florence's driver's license photo. (*Id.* at ¶¶ 18-19.) Curley also found Florence's phone number on Brooks's phone. (*Id.* at ¶ 20.) Curley gave the number to an undercover officer ("the UC"). (*Id.*) On December 13, 2022, the UC called Florence to buy drugs. (*Id.*) The UC and Florence agreed to meet the following day. (*Id.*) This was to be the first of four controlled buys.

---

[1] The items officers seized at the Melbourne residence included nearly $60,000 in cash, digital scales, a money counter, two phones, body armor, nine firearms, hundreds of rounds of ammunition, and multiple kilograms of suspected narcotics. (Doc. No. 32-2.)

3

On December 14, 2022, the next day, Florence called the UC and told him to drive to East 115th and St. Clair. (*Id*. at ¶ 21.) Florence called again and told the UC to drive down East 115th and park. (*Id*.) Shortly after, Florence called a third time and told the UC to drive further down the street and that he was standing in the middle of the street. (*Id*.) The UC continued down the street, met Florence, and gave him $200 for the drugs. (*Id*. at ¶ 22.) As the UC drove away, agents surveilling the controlled buy saw that Florence had a Glock in his waist band and they observed him drop and pick up an extended magazine. (*Id*.) The agents continued to surveil Florence after the controlled buy and saw him sell drugs to "multiple [other] individuals." (*Id*.)

The UC gave Curley the suspected crack cocaine and fentanyl he purchased from Florence. (*Id*. at ¶ 23.) Curley field tested the suspected crack cocaine, and it tested positive for cocaine. (*Id*.)

On December 22, 2022, the UC called Florence to arrange a second controlled buy of another $200 of drugs. (*Id*. at ¶ 24.) This time, Florence told the UC to meet him at Fleet and Broadway. (*Id*.) The UC parked at an Advance Auto Parts store on Broadway Avenue. (*Id*. at ¶ 25.) Florence pulled up in a black SUV. (*Id*.) Florence rolled down his window and told the UC to get into his vehicle. (*Id*.) The UC got into Florence's SUV and gave Florence $200 in exchange for suspected fentanyl. (*Id*.) Agents tried to follow Florence after the controlled buy, but Florence was driving too aggressively. (*Id*.) The suspected fentanyl the UC bought tested positive for heroin, acetylfentanyl, fluorofentanyl, fentanyl, and cocaine. (*Id*. at ¶ 27.)

On December 23, 2022, the Beachwood police contacted Curley and told him that they had recovered a stolen vehicle at the Beachwood Place Mall. (*Id*.) Inside the vehicle, Beachwood police found a stolen firearm, multiple license plates, heroin, and Florence's Ohio identification. (*Id*.)

4

On December 30, 2022, the UC contacted Florence for a third controlled buy. (*Id*. at ¶ 29.) Florence told the UC to again meet him at East 115th and St. Clair. (*Id*. at ¶ 30.) The UC parked on East 115th. (*Id*.) Florence parked behind him in a white SUV with Maryland license plate number 4EP0098. (*Id*.) The UC exited his vehicle and got into Florence's SUV to buy suspected fentanyl, which later tested positive for heroin, acetylfentanyl, fluorofentanyl, fentanyl, and cocaine, as before. (*Id*. at ¶ 32.)

On January 6, 2023, investigators got a federal search warrant for the location of Florence's cell phone. (*Id*. at ¶ 33.) For a week following, they recorded the cell phone's location and ultimately narrowed it to within 401 meters of the intersection of Phillips Avenue and Bender or Rozelle Avenue in East Cleveland. (*Id*. at ¶ 34.)

On January 13, 2023, the UC called Florence to arrange the fourth and final controlled buy. (*Id*. at ¶ 35.) This time, agents were monitoring Florence's cell phone ping from a location near the Melbourne residence. (*Id*.) While doing so, they saw a white Chevy Equinox parked in the driveway of the Melbourne residence with a Maryland license plate number matching the one on the white SUV Florence drove to the third controlled buy. (*Id*.) Florence texted the UC that he would meet him at East 115th. (*Id*.) Shortly after the UC told Florence that he was at East 115th, agents saw Florence exit the Melbourne residence and enter the white Chevy with the Maryland plate. (*Id*.) Agents followed Florence to East 115th where they saw Florence park behind the UC. (*Id*.) The UC exited his vehicle, got into Florence's, purchased the drugs, then got back into his vehicle and left. (*Id*.) Agents followed Florence as he drove directly back to the Melbourne residence where he parked in the driveway. (*Id*.) During this time, the pings agents received from Florence's cell phone matched Florence's movements. (*Id*.)

At a debrief after the controlled buy, the UC said he saw Florence had a black Glock firearm on his driver's seat. (*Id*. at ¶ 36.) The drugs the UC bought from Florence field tested positive for cocaine. (*Id*. at ¶ 37.)

Based on the above and his training and experience, Curley averred that there was probable cause to believe that evidence of drug trafficking would be found at the Melbourne residence. (*Id.* at ¶ 40.) He applied for the search warrant on January 17, 2023—four days after the last controlled buy. (Doc. No. 32-1, PageID# 127-29.) Two days later, law enforcement executed the search of the Melbourne residence. (Doc. No. 32-2.)

### III. Law and Analysis

#### A. Probable Cause for the Search Warrant

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[P]robable cause exists when an affidavit shows a 'fair probability' that criminal evidence will be found in the place to be searched." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021).

"[A] probable-cause 'nexus' must connect . . . the specific place that officers want to search . . . [with] the specific things that they are looking for." *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). Law enforcement can infer a nexus from "the type of crime being investigated, the nature of things to be seized, and the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014).

6

When applying the probable cause standard, "the [issuing] magistrate [judge] uses a practical standard, based on factual and practical considerations of every day life, rather than a technical standard." *United States v. Sneed*, 385 F. App'x 551, 556 (6th Cir. 2010) (citing *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)). Courts should "accord the magistrate [judge]'s determination" of probable cause "great deference." *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) (quoting *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008)). The question is "whether the magistrate [judge] had a substantial basis for his conclusion" that probable cause existed. *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019).

Defendants argue that the controlled buys failed to establish a connection to the Melbourne residence because none of the buys occurred there. (Doc. No. 30, PageID# 99.) The Government responds that the controlled buys together with law enforcement's surveillance of Florence leaving the Melbourne residence to conduct the drug transaction and then returning there "clearly establishe[d] a nexus between Florence's residence and his criminal activity." (Doc. No. 34, PageID# 174.) And even if this Court were to disagree, the Government argues that the good faith exception would apply. (*Id*. at PageID# 175.)

The four controlled buys established that Florence was a drug dealer. But Florence's "status as a drug dealer, standing alone," is insufficient to establish a nexus to the Melbourne residence. *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016). Rather, there must be "other evidence linking [Florence's] drug dealing to the [Melbourne] residence." *United States v. Johnson*, 2023 U.S. App. LEXIS 21417 at *3 (6th Cir. Aug. 14, 2023) (citing *Reed*, 993 F.3d at 448). Such "other evidence" is present here, for the following reasons.

First, Florence arrived at the second controlled buy on December 30, 2022, driving a white SUV with Maryland license plate number 4EP0098. (Doc. No. 32-1, ¶ 30.) On January 13, 2023, shortly before the fourth controlled buy, officers saw this same SUV with the same Maryland license plate parked at the Melbourne residence. (*Id*. at ¶ 35.) The white SUV thus linked Florence and his drug dealing to the Melbourne residence.

Second, on January 13, 2023, when the UC told Florence he was at the agreed upon location for the fourth controlled buy, officers observed Florence get into the white SUV and leave the Melbourne residence. (*Id*.) Officers then followed Florence as he drove directly to the drug buy location. (*Id*.) Florence sold the UC the drugs while inside the SUV and drove directly back to the Melbourne residence, parking in the driveway. (*Id*.) This observation further linked Florence's drug dealing to the Melbourne residence.

Finally, investigators only identified the Melbourne residence by tracking Florence's cell phone location pings. (*Id*.) As Curley explained in his Affidavit, when he searched for Florence in law enforcement databases, Florence's residential address came back as on Harvard Avenue in Cleveland. (*Id*. ¶ 19.) Curley believed, however, that Florence's actual residence was on Melbourne Road. (*Id*. ¶ 12.) He came to this conclusion based on Florence's cell phone pings that narrowed Florence's location to the intersection of Phillips Avenue and Bender or Rozelle Avenue in East Cleveland. (*Id*. at ¶ 34.) During the fourth controlled buy, investigators were monitoring Florence's cell phone pings while driving in this area when they saw the white SUV with the Maryland plate parked at the Melbourne residence. (*Id*. at ¶ 35.) When they then saw Florence get into the SUV, investigators concluded that they had identified Florence's actual residence. Stated differently, but

8

for the Melbourne residence's link to Florence and his drug dealing, law enforcement would never have identified the residence as a location likely to have evidence of Florence's crimes.

In sum, Curley's Affidavit established a sufficient nexus between Florence's crimes and the Melbourne residence. It demonstrated Florence's "ongoing drug trafficking" through the four controlled buys. *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) (repeated purchases of cocaine made it reasonable to infer that evidence would be found at the defendant's residence). The Affidavit also contained information concerning surveillance conducted of Florence demonstrating that he was using the Melbourne residence for his drug trafficking. *See United States v. Sumlin*, 956 F.3d 879, 887 (6th Cir. 2020) ("drug dealers like [the defendant] routinely keep drug-related items . . . at their residences"). It "provid[ed] a reasonable inference that [Florence] transported narcotics from [the Melbourne residence] to the location of the [drug] sale" through the observation of him directly leaving from and returning to the Melbourne residence for the fourth controlled buy. *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019) (finding a sufficient nexus where "agents had conducted three controlled buys . . . from [the defendant] and observed him drive directly from his condo to the site of the most recent buy"); *see also United States v. Ward*, 2023 U.S. App. LEXIS 2059 at *9 (6th Cir. Jan. 24, 2023) (finding a sufficient nexus where the defendant was observed driving a car he parked at the searched residence to a controlled buy). Finally, it detailed Curley's training and experience, which led to his conclusion that evidence of drug trafficking would be found at the residence. *See United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir. 1996).

In his Reply, Florence argues that the Sixth Circuit has only found a nexus between a drug dealer and his residence where "officers observed indisputable proof that the sale actually occurred *inside* the location to be searched." (Doc. No. 38, PageID# 190-91.) The Court disagrees. "Probable

cause does not require that the crime occurred at the location of the search, only a fair probability that evidence of the crime will be found there. *United States v. Johnson*, 2023 U.S. App. LEXIS 21417 at *5 (6th Cir. Aug. 14, 2023) (citing *United States v. Williams*, 544 F.3d 683, 686-87 (6th Cir. 2008)).

Brooks contends in his Reply that the Sixth Circuit's decision in *Brown* requires this Court to find the nexus insufficient in this case. (Doc. No. 35, PageID# 181-82.) But in *Brown*, the court concluded that the nexus was insufficient because "[a] more direct connection was required, such as surveillance indicating that Brown had used the car to transport heroin to Middleton's on the day in question." 828 F.3d at 383. In other words, the very evidence that was lacking in *Brown*—surveillance of the defendant transporting drugs in his car to a drug buy location—is present here.

Accordingly, the magistrate judge had a substantial basis for her conclusion that probable cause existed to search the Melbourne residence.

B.     **The Good Faith Exception**

The good faith exception applies when law enforcement "conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238-39 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge]'s decision." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).

"Even if an affidavit describing a suspect's drug activity does not establish a probable-cause nexus between the place to be searched and the evidence of that activity, the affidavit will avoid the bare-bones label so long as it identifies a 'minimally sufficient' nexus between the two." *Reed*, 993 F.3d at 450 (citing *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004)). Minimally sufficient means there is "some connection, regardless of how remote it may have been—some

modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)). This is a "less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause." *United States v. Fitzgerald*, 754 F. App'x 351, 362 (6th Cir. 2018) (quoting *United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005)).

Defendants argue that the good faith exception does not apply because the affidavit did not have the necessary "minimally sufficient nexus." (Doc. No. 35, PageID# 182; Doc. No. 38, PageID# 192.) Specifically, they contend that the Affidavit "provides no information about when Mr. Florence was at the Melbourne residence, how often he was there, or if it was his residence at all." (Doc. No. 35, PageID# 182.)

Curley's Affidavit identifies a minimally sufficient nexus between Florence's drug dealing and the Melbourne residence. Investigators conducted four controlled buys with Florence to confirm that he was dealing drugs. They tracked his cell phone location to identify where he was residing. Once they found his residence, they observed the SUV he had used on one of the controlled buys. Lastly, they saw Florence leave from the Melbourne residence for the fourth controlled buy and directly return there after he completed the sale. Even if the Affidavit lacked sufficient probable cause for the magistrate judge to issue the search warrant, it contained more than sufficient indicia of probable cause for the officers who executed the search to reasonably rely on it. *See Reed*, 993 F.3d at 454.

Accordingly, even if the Affidavit lacked probable cause, the good faith exception applies.

### IV. Conclusion

For the reasons set forth above, the Court denies Defendants' Motion to Suppress. (Doc. Nos. 30, 32.)

**IT IS SO ORDERED.**

Date: October 30, 2023

 s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE